1

2

3

ERIC L. HERYFORD (SBN 169931)
TRINITY COUNTY DISTRICT ATTORNEY
Post Office Box 310
Weaverville, California 96093
Tel.: (530) 623-1304/Fax: (530) 623-8346
eheryford@trinitycounty.org

4

5

6

7

ROLAND TELLIS (SBN 186269)
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436
Tel.: (818) 839-2320/Fax: (818) 986-9698
rtellis@baronbudd.com

8

9

10

11

KIRK J. WOLDEN (SBN 138902)
CLIFFORD L. CARTER (SBN 149621)
CARTER WOLDEN CURTIS, LLP
1111 Exposition Blvd., Ste. 602
Sacramento, CA 95815
Tel.: (916) 567-1111/Fax: (916) 567-1112
kirk@cwclawfirm.com

12

13

14

15

RICHARD GOLOMB (To be admitted *Pro Hac Vice*)
KENNETH J. GRUNFELD (To be admitted *Pro Hac Vice*)
GOLOMB & HONIK, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel.: (215) 989-4381/Fax: (215) 985-4169

16

Attorneys for Plaintiff
THE STATE OF CALIFORNIA *EX REL.* DISTRICT ATTORNEY, TRINITY COUNTY

17

18

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

19

20

21

22

23

24

25

26

27

28

| THE PEOPLE OF THE STATE OF CALIFORNIA EX REL., ERIC L. HERYFORD, DISTRICT ATTORNEY, TRINITY COUNTY,<br><br>                        Plaintiff,<br><br>        v.<br><br>CITIGROUP INC., CITIBANK, N.A., AND DEPARTMENT STORES NATIONAL BANK,<br><br>                        Defendants. | Case No.<br><br>**COMPLAINT FOR REMEDIES UNDER UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE SECTIONS 17200, *ET SEQ.*** |
| --- | --- |

1

COMES NOW, the People of the State of California, by Plaintiff Trinity County District Attorney Eric L. Heryford ("the People" or "the State"), who brings this Complaint against Defendants Citigroup Inc., Citibank, N.A., and Department Stores National Bank (collectively "Defendants" or "Citi"), and alleges as follows:

## INTRODUCTION

1.    This action stems from Defendants' marketing, selling, and administering various fee-based ancillary products and services to its California credit cardholders, which are supplementary to the credit provided by the credit card(s). Specifically, Defendants have engaged in deceptive marketing and sales practices in connection with these ancillary products and services; failed to adequately disclose important terms and conditions about these ancillary products and services; failed to obtain California consumer's knowing and meaningful consent to enroll in or pay for these ancillary services; inadequately handled cancellation requests ; and continued to charge California consumers once they were enrolled for said ancillary products even though Defendants knew or should have known these consumers did not meaningfully consent to enroll and/or were per se ineligible or otherwise did not qualify for the products' benefits based on the products' myriad confusing and obtuse conditions, restrictions, limitations and exclusions.  This misleading course of conduct which is fraudulent, unlawful and unfair under California's Unfair Competition Law ("UCL") is detrimental and substantially injurious to California consumers and to fair competition in this State.

2.    Defendants have marketed these ancillary products as providing protection for consumers against improper or unauthorized charges on their credit cards, identity theft, lost or stolen credit cards, and/or as providing benefits during unexpected life events.  Defendants have marketed and offered cardholders the ancillary products for each of the consumer's Citi credit card accounts; however, Defendants do not condition a consumer's ability to get a Citi credit card account on the consumer's agreement to purchase or sign-up for one or more of these ancillary products. Indeed, enrollment in these optional ancillary products is not related to, nor does it impact, Citi's decision to extend credit to these consumers.

3.     Upon information and belief, when consumers have initiated contact with, or have been contacted by, Defendants about Citi's credit cards, a process has been triggered whereby a California consumer can unknowingly and unintentionally receive ancillary products.  While this has happened most often after a consumer is approved for a Citi credit card, Defendants also have offered and sold the consumer ancillary products during subsequent communications.

4.     Additionally, Defendants often have enrolled consumers in these ancillary products even though the consumers did not assent to pay for them.  This process is referred to as "slamming."  Enrollment may be based on highly deceptive and misleading telemarketing calls, forged or non-existent mailers, online applications, or nothing at all.  In each instance, an unknowing consumer is charged monthly fees without his or her meaningful consent or understanding that his or her credit card will be charged for these products. Defendants are in a position to slam this consumer because, unlike a typical marketer or seller, Defendants are already the consumer's credit card company and already have his or her credit card number(s) on file.

5.     Certain types of Defendants' ancillary products purport to pay a California consumer's required minimum monthly payment for a limited period of time under certain triggering circumstances, such as involuntary unemployment, illness, or changes in family status, thereby, preventing the account from becoming delinquent.  These ancillary products have included, but are not limited to, the following: "Credit Protect," "Credit Protector," "Payment Protector," "PaymentAid," "PaymentAid Plus," and other monikers that all offer similar coverage (collectively "Ancillary Plan(s)" or "Plan(s)").  Furthermore, because Defendants make no effort to determine whether consumers are eligible for the benefits associated with the Plans at the time of sale, Defendants bill California consumers for this coverage, regardless of their status at the time of enrollment.

6.     Ancillary Plans, such as those administered by Defendants, have come under increased scrutiny by the federal government and been the subject of litigation brought by state attorney generals and private citizens alike.

7.      Defendants engage in unfair and deceptive business practices, in violation of the California Unfair Business Practices Act (California Business & Professions Code §17200, *et seq.*) ("UCL"), by selling and charging a cardholder for Ancillary Plans, regardless of whether the consumer wanted the Plan and/or was entitled to benefits under the Plan; as well as by offering and administering a consumer's claim for benefits in an unfair and deceptive manner.

8.      Upon information and belief, as a result of their unfair and deceptive practices, Defendants have amassed substantial sums of money from the monthly fees paid by California consumers for these Plans.

9.      Plaintiff Eric Heryford, District Attorney for the County of Trinity, brings this action on behalf of the people of the State of California as authorized by section 17204 of the UCL against Defendants to address their use of unfair and deceptive methods, acts, conduct, and trade practices in connection with the sale of Ancillary Plans.[1]

## PARTIES

10.     Trinity County District Attorney Eric L. Heryford, brings this action in his sovereign and quasi-sovereign capacity on behalf of the People to protect all California consumers and the people of the State of California and fair competition in this State.[2]

11.     Upon information and belief, Defendant Citigroup Inc. is incorporated in Delaware, has the capacity to be sued under Delaware law, has its principal place of business in the State of New York, and is a publicly-traded company.

12.     Upon information and belief, Defendant Citibank, N.A, operates a nationally chartered bank, and is a subsidiary of Citicorp, which in turn is a subsidiary of Citigroup Inc.

13.     Upon information and belief, Defendant Department Stores National Bank ("DSNB") is a subsidiary of Citibank.  DSNB was chartered in 2005 and its principal place of business is Sioux Falls, South Dakota.  DSNB is the credit card issuer of Visa and retail private

---

[1] In bringing this action, the State does *not* challenge Defendants' ability to set the price for an ancillary credit card product; however the State *does* challenge the method and manner in which Defendants marketed and administered these Plans to California residents.

[2] District Attorney Heryford is authorized to bring this action under B&P Code §§ 17204 and 17206, as well as common law authority.

label accounts for Citibank's relationship with Macy's, Inc.  Cards issued by DSNB bear the markets of Macy's, Inc. store brands such as Bloomingdale's and Macy's

14.     At all times material herein, Defendants Citigroup Inc., Citibank, N.A., and DSNB (collectively "Citi") have been doing business, and continue to do business, within the State of California and in the County of Trinity.  Citi is one of the largest banks in the United States and in the world, with consolidated assets over 2 trillion dollars.  Citi's credit card division is run by its brand, "Citi Cards."  Citi Cards is one of the world's largest providers of credit cards with more than 21 million customer accounts.

### JURISDICTION AND VENUE

15.     Individually and collectively, the defendants named herein systematically and continuously conduct business within this judicial district and in Trinity County.  Specifically, Defendants Citigroup Inc., Citibank, N.A., and DSNB regularly advertise and promote their businesses, secure credit card and Ancillary Plan customers, and offer credit card services to businesses and individuals throughout the State of California and within Trinity County.

16.      This Court has subject matter jurisdiction pursuant to 12 U.S.C. §§ 5552(a) & 5565 and 28 U.S.C. §§ 1331.  This Court has supplemental jurisdiction over the state law claims pled pursuant to 28 U.S.C. § 1367.

17.     This Court has jurisdiction over Defendants because they do business in California and have committed acts in California causing injury to California consumers.

18.     In accordance with 12 U.S.C. § 5552(a) and 28 U.S.C. § 1391, venue is proper in the Eastern District of California.

19.     The claims asserted herein are brought solely by the State and are wholly independent of any claims that individual credit card holders may have against Defendants. The State expressly disclaims any proposal to join any group or mass of claimants for plaintiffs for trial or otherwise; because the State is the only Plaintiff and the sole claimant, any such joinder is not possible, and is independently expressly disavowed by the State.  All claims in this action are asserted on behalf of the State pursuant to Section 17200, *et seq*., of the UCL, which specifically authorizes this action, and are not asserted on behalf of individual claimants

or members of any proposed class.  The State expressly disclaims the existence of any class or class action; because the State does not appear as the representative of any class action and does not plead any class action, class representation is not possible, and is independently expressly disavowed by the State.  Any claim that any individual citizen may have in his or her own behalf is not raised herein.

20.     Notwithstanding anything in this Complaint, Plaintiff District Attorney Heryford on behalf of the people of the State of California is not challenging the amount of the charges or the rate of the Ancillary Plans. The charges addressed herein should not have appeared on the credit card bills at all. This Complaint addresses the unlawful, unfair, and fraudulent manner in which credit card customers were enrolled in and charged for the Plans and the fraudulent administration associated therewith, but does not challenge the rate of the charges or Defendants' ability to set the price for any Ancillary Plan Defendants have or continue to offer.

## FACTUAL BACKGROUND

**I.     Defendants' Ancillary Plans Are Marketed, Offered, and Sold to California Consumers in an Unfair, Deceptive, and Unconscionable Manner.**

**A.     Defendants have generated substantial revenue from marketing, offering, and selling Ancillary Plans products to cardholding California consumers.**

21.     Upon information and belief, Defendants have offered, marketed, and sold Ancillary Plans to all Citi credit card holders, but most aggressively market these products to vulnerable California consumers who fall into the subprime credit category, who have low credit limits because of impaired credit ratings, or who are looking to establish or re-establish their credit.

22.     Defendants' Ancillary Plans share common characteristics in that each have been: (a) marketed to California consumers as protection from fraud or unauthorized account charges; (b) marketed to California consumers as a way for them to increase their financial security; (c) considered an optional product that is not required to maintain a credit card account with Citi; and (d) tethered to each consumer's specific Citi credit card account(s). Defendants' Ancillary Plans have an associated monthly fee, which is separate and distinct

from interest and other fees charged by Defendants as part of Citi's extension of credit to the consumer. Each Plan's fee is charged directly to the consumer's credit card account each month, with no separate statement, bill, or invoice provided.

23. Contrary to Defendants' simple representations for marketing purposes, Citi's Ancillary Plans are in fact a dense maze of limitations, exclusions, and restrictions, making it impossible for consumers to knowingly determine what these products cover.

24. Examples of the types of Defendants' Ancillary Plans include:

(a) Payment Protection – This product allegedly safeguards consumers' credit card accounts by canceling or temporarily suspending the required minimum monthly credit card payments due in certain highly restricted circumstances, or by permanently canceling accounts in other circumstances.

(b) Identity Theft Protection – In exchange for a fixed-rate monthly fee, this product purports to monitor consumers' credit scores for indicia of identity theft and will purportedly alert the enrollees if something suspicious happens to their credit scores.

25. Defendants have enrolled large numbers of California cardholders and charged them substantial sums of money for enrollment in Ancillary Plans. These enrollment fees, as imposed by Defendants, are separate charges for a service independent of Defendants' extension of credit to California consumers.

26. Defendants' extension of credit is not contingent on a cardholder's purchase of any of Citi's Ancillary Plans, including Payment Protection. Each Plan is an optional, ancillary service or product for which a separate fee is charged.

**B. Defendants sign up unsuspecting cardholding California consumers for ancillary Plans without their meaningful, knowing authorization or consent.**

**1. Defendants have marketed these Plans to California consumers in an unfair, deceptive and unconscionable manner.**

27. Defendants have enrolled consumers in Ancillary Plans using highly deceptive and misleading telemarketing calls, thereby, charging some California consumers without their meaningful consent or understanding that their credit card will be charged for these Plans.

1 Unlike typical marketers or salespersons, Defendants are in the unique position to sign up an
2 unsuspecting consumer for these Plans because, as the consumer's credit card company,
3 Defendants already have his or her credit card number(s) on file.

4      28.   Defendants have sold Ancillary Plans to California consumers through a
5 number of different channels, including but not limited to:

6      (a)   Online and direct mail marketing, in which Defendants may ask that consumers
7 "check the box" to initiate the Plan.  This marketing method requires an affirmative action by
8 the consumer to enroll, such as checking a box or initialing a monthly statement, other mailer,
9 or online form in a designated space to authorize enrollment.

10      (b)   Telemarketing, where consumers may be asked to press a button on the
11 telephone keypad or verbally agree in order to initiate one or more Plans.

12      29.   Defendants have a financial motive to enroll as many California consumers as
13 possible into these highly lucrative Ancillary Plan schemes.  Additionally, upon information
14 and belief, individual telemarketers have been incentivized to enroll as many cardholders as
15 possible because their compensation is either commission-based, determined by the number of
16 cardholders they enroll, or based on some other form of evaluation and compensation scheme.

17      30.   Unfair, deceptive, and unconscionable practices are rife in the marketing of
18 Defendants' Ancillary Plans.

19      31.   Defendants' telemarketers and "customer service" representatives have
20 employed an array of deceptive sales tactics to elicit cardholders into communicating some
21 affirmative response, knowing that the cardholders do not actually understand that they are
22 supposedly agreeing to purchase one or more Ancillary Plans.

23      32.   Defendants' telemarketers may characterize the call as a courtesy to thank
24 cardholders and remind them of the benefits they already get through their credit card
25 agreement, e.g., cash back, airline miles, rewards, *etc.*; however, they are in fact calling to sell
26 the consumer Ancillary Plans such as Payment Protection.

27      33.   Defendants' customer service representatives may speed through, skip
28 altogether, or alter the text of the information they are required to provide to cardholders. Upon

1   information and belief, this is done in an effort to make these disclosures sound like confusing

2   legalese.  These telemarketers conclude by saying "OK?" or by asking if the person heard them

3   or understood, knowing that such a question will almost always elicit an affirmative response

4   such as "ok" or "yes."  Although the cardholder believes they have just listened to a courtesy

5   call, Defendants treat any affirmative response elicited by the telemarketer as the cardholder's

6   agreement to enroll in Ancillary Plans.  So while the cardholder may have said "ok" or "yes" at

7   the conclusion of the call, no reasonable person listening to the recordings of these calls would

8   conclude that the cardholder was giving his or her knowing, meaningful assent to be charged a

9   monthly fee for enrollment in one or more Plans.

10          34.     Another tactic Defendants' telemarketers use is to offer to send the cardholder a

11   "packet of information" about the Payment Protection Plan.  Defendants treat an affirmative

12   response to this inquiry as authorization for paid enrollment, even though the consumer does

13   not understand or believe that he or she has agreed to purchase anything.

14          35.     Citi has such a "packet of information" for each of the Plans offered.   For

15   instance, Defendants use a document entitled "*PaymentAid Terms and Conditions in Plain

16   Language*" for this purpose for its Payment Protection Plan.  Although Defendants are required

17   to provide enrollees with this information, many California consumers never receive the

18   packets Defendants allegedly send out.  Moreover, those consumers who actually receive the

19   packet may ignore or disregard it because they do not understand that they had already been

20   enrolled in one or more Plans.  These consumers reasonably assume the information packet is

21   just another piece of junk mail from a credit card company.   And while a cardholder who

22   accepted Defendants' offer to send information about one or more Plans may recognize what

23   the packet relates to, the consumer reasonably assumes that he or she must take further steps

24   before becoming enrolled in the Plan.  If the slammed consumer simply throws out the packet

25   without reading it, signing it, or conferring with Citi about it, he or she is nevertheless enrolled

26   in the Plan as a result of Defendants' misleading practices described herein.

27          36.     Defendants also have utilized the card activation process as another way to

28   wrongfully enroll California consumers.  Defendants tell each cardholder that he or she must

activate the credit card by calling a specific number, provided by Defendants, from the cardholder's home phone number.  Defendants have taken this opportunity to sell Ancillary Plans, like Payment Protection, to unsuspecting cardholders who may believe that the information being provided is related to the card being activated and not an additional, separately charged service.

37.    Many California cardholders, accustomed to the legal language and fine print received from a credit card company, like Citi, become immune to the terms and conditions communicated to them; and thus, are particularly susceptible to believing that they are listening to some legal text that must be read to them rather than a "sales pitch."  Because of this, a consumer often will reflexively reply "ok" but has no idea that Defendants use this general affirmative response to sign up the consumer for an Ancillary Plan.  These consumers have no idea that they have "purchased" an additional product or service like one or more Ancillary Plans.

38.    Upon information and belief, Defendants also have enrolled some cardholders in one or more Ancillary Plans like Payment Protection even if the consumer did not provide an affirmative response during these phone calls.  In such instances, Defendants have no proof of affirmative assent because there is (a) no affirmative response on the recording; (b) a clear rejection of the offer; or (c) no record of the call.  The cardholder has been "slammed," that is, involuntarily enrolled in one or more Plans without his or her knowledge or consent.

39.    Each of the aforementioned instances is not a typical telemarketing call. Defendants' telemarketer does not need the consumer to provide his or her credit card number or any additional information to purchase the product because the telemarketer is the credit card company.  As a result, Defendants can charge the consumer's account when there has been no clear and knowing consent given.

          **2.**    **California consumers who have been "slammed" with Ancillary Plans receive little to no relief from Defendants.**

40.    Defendants know that slamming frequently occurs.  In fact, the "refund" process itself is set up on the assumption that consumers have been deceived and do not

understand that they have been enrolled in Payment Protection.  When a California consumer calls for a refund, Defendants make no effort to then determine how it came to be that the cardholder was enrolled without his or her authorization.

41.     Many cardholders have no idea they are enrolled in Ancillary Plan(s) and do not notice or appreciate the meaning of the line-item charge for the Plan on their credit card bills. This is because the charge is listed as one of the cardholder's other monthly purchases.

42.     Some cardholders have accounts that do not require close inspection of monthly statements.  This may be because they (a) are not making new purchases on the account; (b) may simply be seeking to pay off the balance; (c) have taken advantage of a balance transfer offer; or (d) utilized the account to make a single purchase.  Others simply do not receive a monthly bill and/or may be enrolled in autopay.

43.     Consumers may pay this hidden charge month after month for a period of time before becoming aware of it.  For online accounts, the charges for Ancillary Plans are often posted to a cardholder's account on the last day of each statement period. That statement is then archived.  A cardholder may review current activity on their account regularly; yet, never see the charge billed to their account on the last day of the previous billing cycle's statement because of Defendants' "auto-archive" policy.

44.     In addition to the obvious unfairness of enrolling cardholders without their valid authorization, Defendants reap an extra windfall because these enrollees will never invoke the supposed benefits of the Plans for which they were charged because they do not even know they may do so.

45.     If a cardholder does not discover the additional monthly charge for Ancillary Plans before 30 days have passed from the date of his or her alleged enrollment in and purchase of one or more Plans, Defendants will not automatically refund the overpayments to the cardholder.

46.     Cancellation and disputes about enrollment in Ancillary Plans are so widespread that Defendants use template form letters to send to slammed California consumers who complain. Moreover, instead of "coming clean" to these aggrieved consumers, Defendants

make it exceedingly difficult for them to get relief, such that many California consumers give up hope of ever getting their money back after paying for a product they did not request and did not use.

**II.     Defendants Misrepresent and Fail to Disclose the True Nature of Payment Protection, Such that Ineligible Consumers are Enrolled.**

47.     Defendants have marketed Payment Protection through direct mail, online, and over the phone.   Citi represents Payment Protection as a product that pays the required minimum monthly payment due on the consumer's credit card account.   Defendants have advised California consumers that these Plans protect you in the event of certain triggering circumstances, e.g., involuntary unemployment, illness, or changes in family status, which supposedly prevents the cardholder's account from becoming delinquent during these unexpected circumstances.   However, benefits under the Plan are not so readily available.

48.     Citi's marketing for this ancillary product proclaims "[s]o much protection and peace of mind for so little!"[3]   However, Defendants' "so much protection and peace of mind" tagline misrepresents the true nature of Payment Protection; specifically, that Citi imposes Payment Protection fees on California consumers who did not authorize the charges or who, at the time of enrollment, were not eligible for the alleged benefits provided by the Plan. Defendants misrepresent that their Ancillary Plans provide protection in a cardholder's time of need because Citi's "so much protection and peace of mind" advertising campaign fails to disclose and misrepresents that Defendants' Payment Protection Plans have many hidden, variable, and narrow restrictions on use.

49.     Defendants have marketed their Payment Protection Plans to individuals who do not qualify for the purported benefits of the Plans.   The numerous qualifications and restrictions set forth in Defendants' fine print expose the advertised "protection" as an illusion. For example, because Defendants do not determine California consumers' eligibility for various options under the Payment Protection Plan before marketing, offering, and selling it to

---

[3] *See* https://www.paymentaidplus.citi.com/details.aspx?ordsrc=D1083 (last viewed on June 14, 2010); *see also* https://www.cardbenefits.citi.com/Products/CitiPaymentSafeguardDeluxe.aspx ("I bought Citi Payment Safeguard Deluxe today so I could worry less tomorrow.") (last viewed on August 4, 2015).

consumers, Defendants knowingly enroll California consumers, and charge them, for a product that the consumers can never use.

50.     Defendants have marketed Payment Protection as a service for consumers to safeguard their credit card accounts, either suspending or crediting the required minimum monthly credit card payments due by permanently canceling the credit card account.  The availability of either of these services depends on whether the cardholder has experienced a certain circumstance, as set forth and specifically defined by the terms and conditions of the Plan.

51.     Upon information and belief, consumers are required to pay monthly interest charges or the Ancillary Plan fees for the month in which Payment Protection Plan benefits are being utilized.  However, when minimum monthly payments are credited under the Plan, the monthly interest charges as well as the Payment Protection fee and other Ancillary Plan fees continue to accrue without adequate disclosure to California consumers.

52.     The Payment Protection fee and other Ancillary Plan fees accrue and are imposed separately from monthly interest charges and independent of standard account maintenance fees.  The Payment Protection fee and other Ancillary Plan fees are charges assigned to cover a particular service, not a general charge for Defendants' extension of credit.

53.     Different versions of Citi's Payment Protection Plans contain different terms and conditions, which are complicated and varied.  However, each version of the Plan provides for some form of payment suspension upon the occurrence of one of the following defined events: Involuntary Unemployment; Disability; Leave of Absence; Disaster; Hospitalization; Death of a Child, Spouse or Domestic Partner; Celebration Event; or Death Benefit.  The restrictions, limitations, and exclusions associated with these benefit-triggering events are expansive and constantly evolving.

54.     Defendants do not make a reasonable effort and do not undertake an investigation, including review of information in their possession regarding the cardholder, to determine if Payment Protection coverage would apply to the cardholder.  Such information may include health status, name of last employer, and date of birth, each of which would assist

Defendants in knowing whether a particular cardholder is eligible for Payment Protection benefits.

55.     Defendants have aggressively marketed and targeted California cardholders for enrollment in Payment Protection, even when Defendants have information in their possession indicating that the particular consumer may not be eligible for benefits.

56.     Telephone marketing scripts are incomplete, indecipherable, misleading, and use obfuscatory language.  Similarly, the written materials or "information" provided to California consumers are incomplete, indecipherable, misleading and contain obfuscatory language.

57.     Defendants do not adequately describe or explain the exclusions to California consumers.  Because of this, California consumers are not able to determine whether they lack certain characteristics or fail to satisfy certain criteria that would allow them to be eligible for benefits under the Payment Protection Plans.  Defendants' failures to disclose these conditions is material and misleading because Citi has a common practice of imposing limitations on full coverage or benefits based on the Plan's exclusions.

58.     Exclusions found in the written materials for Defendants' Ancillary Plans, which are only provided after enrollment, include, but are not limited to, the following:

(a)     Some Payment Protection benefits do not apply to retired persons.  This most often affects "elderly" consumers;

(b)     Payment Protection benefits do not apply to or are limited for persons employed part time or seasonally;

(c)     Payment Protection benefits do not apply to persons employed by family members or not employed;

(d)     Payment Protection benefits are limited as to persons who are self-employed;

(e)     Payment Protection benefits do not apply immediately or for some period directly after unemployment or disability;

(f)     Payment Protection benefits do not apply unless the consumer qualifies for state unemployment benefits and continues to meet qualifications;

(g)     Payment Protection benefits do not apply unless the consumer notifies the company and provides verification within a set period of time;

(h)     Consumers may not be able to use their credit card for new purchases while Payment Protection benefits are being provided;

(i)     Payment Protection coverage is limited to per-calendar-year maximums; and

(j)     Payment Protection benefits require continued treatment and verification by a physician for the duration of the disability.

59.     Defendants fail to disclose and/or misrepresent these exclusions in their promotion and sale of their Ancillary Plans, including Payment Protection.

60.     Retired California cardholders, many of whom are senior citizens, are charged for Defendants' Ancillary Plans even though they are categorically excluded from receiving many of the Plan's benefits.  Defendants do not ask customers whether they are retired.

61.     California consumers who are part-time workers, seasonal workers, and workers concluding an employment contract (including ending a military tour of duty) are also limited or categorically excluded from receiving benefits under the Plan.  For example, to qualify for benefits, one needs to work a set number of hours a week in employment considered to be permanent.  However, Defendants make no effort to investigate whether any of the California consumers they charge for Payment Protection are part-time, seasonal, or military workers.  Moreover, these terms are not adequately communicated or defined in written materials.

62.     The Plans limit benefits available to disabled persons.  However, Defendants nevertheless fail to affirmatively inform these individuals of the limitations in benefits when they are enrolled.  In fact, Defendants do not ask customers whether they are disabled.

63.     Defendants do not have a process in place to maintain current and accurate consumer statuses.  Thus, when consumers' statuses change, Defendants continue to charge these California consumers for Payment Protection even though they may no longer be eligible for its benefits.

64.     If California consumers are eventually provided with written materials, the materials themselves are confusing.  Based on what is provided, it is virtually impossible for the consumer to determine all of the exclusions and limitations of Payment Protection.

65.     The premium for Payment Protection is set at a dollar amount per $100 of the ending statement balance for each particular month. For example, upon information and belief, the monthly cost of Payment Protection is anywhere from $0.79 to $0.89 for every $100 of the previous billing period's new balance. Thus, a California cardholder who charges $1,000 a month, and even pays off his or her balance every month, pays between $94.80 and $106.80 per year for Payment Protection.  Upon information and belief, Citi's IdentityMonitor costs an additional $12.95 per month, or $155.40 annually on top of any charges for Payment Protection.  Defendants automatically add this amount directly to the consumer's monthly credit card account statement. These Plan monthly fees are independent of standard account maintenance charges such as interest.

66.     Defendants' "customer service" support is set up in such a way that California consumers cannot easily cancel ancillary products or receive answers to benefit questions, nor can they easily file claims or receive benefits for filed claims.

67.     Upon information and belief, employees at Defendants' call centers are given authority to deny claims immediately over the phone, but do not have authority to approve payment of benefits to claimants in the same manner.

68.     Upon information and belief, when a consumer calls Citi to cancel an Ancillary Plan, Defendants' "customer service" representatives are trained to talk the consumer out of canceling by "upselling" the supposed benefits of the Plan.

69.     When claims for Payment Protection benefits are denied, Defendants have not implemented a process through which a consumer's Payment Protection premiums are refunded, even if the consumer is deemed to be per se ineligible for Payment Protection benefits.  In fact, if a California consumer is denied Payment Protection benefits, Defendants do not remove the consumer from Payment Protection enrollment going forward, nor do

Defendants inform the consumer of his or her continued obligations to pay for Payment Protection, even though the consumer has been deemed to be ineligible for benefits.

70.     Although heralded as coverage designed for a consumer's peace of mind and for use when times get tough, Payment Protection is designed to prey on the financially insecure. Payment Protection is unfair and deceptive because of the (a) practice of "slamming"; (b) numerous restrictions that are imposed; (c) exclusions of benefits; and (d) administrative and bureaucratic hurdles that are placed in the way of California consumers who attempt to secure payments from Defendants under Payment Protection coverage.

71.     As a result of their unfair and deceptive marketing practices related to the sale of Payment Protection, Defendants have substantially increased profits.  This profit is the result of Defendants' ability to charge a separate fee for their Payment Protection product that is independent of the amount of interest charged.

## COUNT I
### Violation of Cal. Bus. & Prof. Code Section 17200, et seq., Unfair Competition Law ("UCL")—Fraudulent, Unlawful and Unfair Business Acts and Practices

72.     Plaintiff re-states and re-alleges all prior paragraphs of this Complaint as though set forth fully herein.

73.     The District Attorney for Trinity County is authorized pursuant to Cal. Bus. & Prof. Code §§ 17204 and 17206 to bring an action for violation of the UCL and the remedies sought herein.

74.     Cal. Bus. & Prof. Code §17200, *et seq.*, precludes unfair competition, *i.e.*, the employment of any unlawful, unfair or fraudulent business acts or practices.  This prohibition extends to any act, omission or conduct or pattern of activity engaged in within California which affects the rights of consumers within the State of California.

75.     Defendants' fraudulent conduct alleged herein includes, but is not limited to: (a) unilaterally imposing upon California consumers Ancillary Plans including Payment Protection without their permission; (b) failing to disclose to California consumers that they were being enrolled in one or more Plans and could only affirmatively opt out if they did not wish to be

enrolled; (c) refusing to refund the money that California consumers paid for Plans in which they were involuntarily enrolled; (d) misrepresenting to California consumers that they were eligible, would remain eligible, and would receive benefits under the Plans; (e) concealing the true nature of the benefits and exclusions of the Plans and the proof required for claims from California consumers; (f) continuing to charge and take payment for Ancillary Plans including Payment Protection for those California consumers enrolled without their effective consent and permission, and/or in a manner likely to mislead reasonable consumers; (g) continuing to charge and take payment for Payment Protection for those consumers, including "senior citizens" and "disabled persons" as defined in Cal. Bus. & Prof. Code section 17206.1, who were enrolled despite not qualifying for the purported benefits of Payment Protection; and (h) otherwise denying California consumers the promised benefits of Defendants' Ancillary Plan programs.

76.    Defendants' fraudulent business practices have involved a pattern and practice of failing to disclose the material facts about Ancillary Plans including Payment Protection. Defendants' omissions and partial disclosures are likely to mislead reasonable consumers about the benefits, limitations and exclusions of these Plans that California consumers have been enrolled in and for which they continued thereafter to pay.  Given Defendants' superior and exclusive knowledge about the Plans' terms and conditions, and their partial misleading disclosures about the Plans' benefits, limitations and exclusions, Defendants have an ongoing duty to disclose facts sufficient to allow reasonable consumers to make an informed decision whether to purchase and/or continue paying for the Plans.  Defendants have failed to discharge this ongoing duty of reasonable disclosure.

77.    Defendants' misrepresentations and omissions about Ancillary Plans including their benefits, limitations, and exclusions alleged herein were material in that a reasonable person would attach importance to such information in making the decision to agree to accept, and purchase and pay for, and to continue to pay for, one or more Plans, whether voluntarily or involuntarily.

78.     Defendants' misrepresentations and omissions about Ancillary Plans as alleged herein including Payment Protection were and remain material to the reasonable consumer; and reliance upon such misrepresentations and omissions is presumed as a matter of law.

79.     Defendants' course of conduct relating to their Ancillary Plans is also unlawful within the meaning of the UCL in that Defendants have and continue to violate relevant laws, statutes, and regulations including but not limited to Cal. Civil Code section 1750, *et seq.* ("CLRA") and the Dodd-Frank Act, 12 U.S.C. § 5532(a). Defendants, through their misleading conduct in enrolling California consumers, their ongoing concealment and failure to disclose the limitations and exclusions to their Plans, and their continued operation of Plans including but not limited to Payment Protection to the monetary detriment of those continuing to be billed and charged for purported Payment Protection program benefits, including those consumers who did not qualify for the purported benefits of the Plans Defendants enrolled their credit card customers,  have and continue to violate sections 1770(a)(5), (7) and (14) of the CLRA.   These sub-sections, respectively, prohibit Defendants from representing in a transaction intended to result or which results in the sale of goods or services to any consumer that such goods or services: (1) have characteristics, uses, or benefits they do not; (2) are of a particular standard, quality or grade if they are not; and (3) confer rights or remedies they do not.  Furthermore, Regulation Z, 12 CFR Part 1026, was issued by the CFPB pursuant to its rulemaking authority under the Dodd-Frank Act, 12 U.S.C. § 5532(a).  Regulation Z sets forth rules relating to the disclosure of terms, conditions, and fees applicable to Ancillary Plans like Defendants' at issue in this Complaint.   Defendants were required to comply with all disclosure requirements of Regulation Z, including those disclosure rules applicable to their Ancillary Plans.  Upon information and belief, when a California consumer "purchased" Ancillary Plans through various channels, including by telephone, Defendants failed to comply with the disclosure requirements set forth in 12 CFR § 1026.4(d); specifically, Defendants: (a) failed to disclose, orally, that Ancillary Plans are not required by Defendants to obtain a credit card; (b) failed to disclose, orally, the fee, terms and conditions of coverage for the Ancillary Plans; (c) failed to disclose, orally, that interest will continue to accrue during any suspension

period; (d) failed to maintain evidence that the consumer, after being provided the necessary disclosures, affirmatively elected to purchase the Ancillary Plans at issue; and (e) failed to mail the required disclosures, as applicable, within three business days after the telephone or online purchase.  Upon information and belief, Defendants offered voluntary Ancillary Plans but did not comply with the disclosure requirements for these services and charges related thereto in violation of 12 CFR §§ 1026.6(b)(3)(ii)(F) and 1026.6(b)(5).

80.    Defendants' aforementioned wrongful conduct is also "unfair" within the meaning of the UCL because it offends established public policy designed to protect California consumers from business practices likely to mislead, is immoral, unethical, oppressive, unscrupulous, and substantially injurious to the people of the State of California.  Defendants' wrongful conduct is also unfair because the public policy offended by Defendants' course of conduct is tethered to specific statutory and regulatory provisions, including but not limited to the CLRA, which prohibit and limit Defendants from acting in the manner herein alleged to the detriment of California consumers.  There is no countervailing benefit to Defendants' conduct, and the injury to consumers and to fair competition in this State is real and substantial.

81.    Defendants' fraudulent, unlawful, and unfair business practices were specifically designed to enroll and to keep California consumers enrolled in and paying for Ancillary Plans including Payment Protection despite the fact that many enrollees were *per se* ineligible for the Plans' benefits.

82.    Defendants' fraudulent, unlawful, and unfair practices as alleged herein are likely to and in fact have deceived California consumers.

83.    Were it not for Defendants' unfair competition, California consumers would not have been unwittingly and unknowingly enrolled in, signed up, or agreed to purchase and/or paid for Ancillary Plans including Payment Protection.

84.    Defendants' unlawful, unfair and fraudulent Ancillary Plan practices have and continue to injure California consumers, and impede and impair fair business competition in the State of California in a manner which is substantially injurious to the people of the State of California.  Section 17204 of the provides that relief designed to address and rectify unfair

competition may be pursued by, *inter alia*, any district attorney in a civil action brought in the name of the people of the State of California, and Plaintiff seeks equitable relief designed to address Defendants' unfair competition in the form of such orders and judgments which this Court deems proper and necessary to accomplish complete justice for the People.

85.     California consumers have lost money as a result of Defendants' unfair competition in that each has and/or continues to expend money for purported Ancillary Plan benefits they would not have paid for had they been reasonably apprised of their alleged enrollment in Ancillary Plans, and the Plans' limitations and exclusions. Plaintiff seeks restitution of all ill-gotten monies paid to Defendants as the result of their unlawful, unfair and fraudulent Ancillary Plan scheme.

86.     Section 17206 of the UCL authorizes the imposition of civil penalties of up to $2,500.00 for each and every act of unfair competition Defendants have or propose to engage in as part of their Ancillary Plan programs.  Section 17206 provides that these civil penalties shall be assessed and recovered by, *inter alia*, any district attorney in a civil action brought in the name of the people of the State of California, and Plaintiff seeks to assess and recover these penalties in this civil action.

87.     Defendants' unlawful, unfair and fraudulent practices alleged herein have and continue to prey upon California's "senior citizen[s]," those age 65 and older.  Section 17206.1 of the UCL provides for the imposition of additional and cumulative civil penalties of up to $2,500.00 for each act of unfair competition perpetrated against a "senior citizen."  Plaintiff is entitled to and does seek these additional penalties for the acts of unfair competition engaged in by Defendants against California "senior citizen[s]."

88.     Defendants' unlawful, unfair and fraudulent practices as alleged herein have and continue to prey upon California's "disabled person[s]," those with a physical or mental impairment which substantially limits one or more life activities.  Section 17206.1 of the UCL provides for the imposition of additional and cumulative civil penalties of up to $2,500.00 for each act of unfair competition perpetrated against a "disabled person."  Plaintiff is entitled to

1   and does seek these additional civil penalties for the acts of unfair competition engaged in by
2   Defendants against California "disabled person[s]."

3       89.   Plaintiff is entitled to recover pre-judgment interest, attorneys' fees, and the
4   expenses and costs of this action.

5   **RELIEF**

6       WHEREFORE, the People of California, by and through the District Attorney for the
7   County of Trinity, respectfully pray that this Court grant the following relief:

8       1.   Entering Judgment in favor of the People in a final order against each
9   Defendant;

10       2.   Providing equitable relief addressing Defendants' unfair competition in the
11   form of such orders and judgments which this Court deems proper and necessary to accomplish
12   complete justice for the People;

13       3.   Declaring that each act of Defendants described in this Complaint constitutes a
14   separate violation of California law;

15       4.   Awarding restitution of all ill-gotten monies paid to Defendants as the result of
16   their violations of the UCL;

17       5.   Imposing civil penalties of up to $2,500 for each violation of the UCL, as
18   authorized by Cal. Bus. & Prof. Code § 17206;

19       6.   Imposing additional civil penalties of up to $2,500 for each violation of the
20   UCL engaged in against "senior citizen[s]" as authorized by Cal. Bus. & Prof. Code § 17206.1;

21       7.   Imposing additional civil penalties of up to $2,500 for each violation of the
22   UCL engaged in against "disabled person[s]" as authorized by Cal. Bus. & Prof. Code §
23   17206.1;

24       8.   Awarding attorneys' fees, costs; and expenses;

25       9.   Awarding pre-judgment interest; and

26       10.   For such other and further relief as the court deems just and proper.

27       11.   For clarification, notwithstanding any language set forth in this paragraph or
28   otherwise in this Complaint, the monetary relief sought by the State in the form of

COMPLAINT

disgorgement and damages is sought on behalf of the State alone for the State's losses and damages, and the State specifically does not seek an award of private damages on behalf of individual California citizens.

Date: March 4, 2016                    Respectfully submitted,

                         By: /s/ Eric L. Heryford
                             ERIC L. HERYFORD (SBN 169931)
                             TRINITY COUNTY DISTRICT ATTORNEY
                             Post Office Box 310
                             Weaverville, California 96093
                             Tel.: (530) 623-1304/Fax: (530) 623-8346
                             eheryford@trinitycounty.org

                             ROLAND TELLIS (SBN 186269)
                             BARON & BUDD, P.C.
                             15910 Ventura Blvd., Suite 1600
                             Encino, CA 91436
                             Tel.: (818) 839-2320/Fax: (818) 986-9698
                             rtellis@baronbudd.com

                             KIRK J. WOLDEN (SBN 138902)
                             CLIFFORD L. CARTER (SBN 149621)
                             CARTER WOLDEN CURTIS, LLP
                             1111 Exposition Blvd., Ste. 602
                             Sacramento, CA 95815
                             Tel.: (916) 567-1111/Fax: (916) 567-1112
                             kirk@cwclawfirm.com

                             RICHARD GOLOMB
                             KENNETH J. GRUNFELD
                             GOLOMB & HONIK, P.C.
                             1515 Market Street, Suite 1100
                             Philadelphia, PA 19102
                             Tel: (215) 989-4381/Fax: (215) 985-4169

                             Attorneys for Plaintiff

23

COMPLAINT